**John D. WAGONER and Phillip W. Wagoner, Plaintiffs,**

**v.**

**CSX TRANSPORTATION, INC., Defendant.**

**No. CIV. 1:02CV281.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Jan. 8, 2003.

---

Travis S. Friend, Frank J. Gray, Matthew J. Elliott, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for John D. Wagoner, Phillip W. Wagoner, Plaintiffs.

Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, Mark W. Baeverstad, Hunt Suedhoff Kalamaros LLP, Fort Wayne, IN, for CSX Transportation Inc, Board of Commissioners of Allen County, Defendants.

1. CSX filed a motion to publish the deposition of Richard J. Cantwell on August 12, 2002, while the case was still in state court. As

*ORDER*

William C. LEE, Chief Judge.

This matter is before the court on a motion for summary judgment filed by the defendant CSX Transportation, Inc. ("CSX") on or about June 11, 2002, in state court. The plaintiffs responded to the motion on July 26, 2002, to which CSX replied on August 12, 2002. On November 21, 2002, after removal to this court, CSX filed a supplemental brief in support of its motion. On November 22, the plaintiffs likewise filed a supplemental brief.

Also before the court is a motion filed by the plaintiffs to strike the declaration of Richard J. Cantwell and to recover attorney's fees and costs associated with taking the deposition of Richard J. Cantwell[1]. CSX responded to this motion on August 12, 2002. A reply has not been filed.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

motions to publish are not required in this court, the motion will be deemed moot.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548." The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

 Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *First National Bank of Cicero v. Lewco Securi-*

*ties Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. 2505. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

■ On October 1, 1999, at approximately 1:03 p.m., an accident occurred on Monroeville Road at a railroad grade crossing owned and maintained by CSX. The CSX train was proceeding south and the vehicle of the plaintiff, John D. Wagoner was eastbound. The complaint alleges as follows:

28. CSX had a duty to maintain the railroad tracks in a reasonably safe manner.

29. CSX breached this duty by, among other things, failing to ensure unobstructed visibility to the north, failing to ensure that train horns could be heard by drivers heading eastbound toward the crossing, and failing to maintain safe, effective, and appropriate warning devices for the crossing.

In its motion for partial summary judgment, CSX argues that the plaintiffs' claim regarding the adequacy of the warning devices is preempted under federal law. CSX notes the following facts. At the time of the accident, Monroeville Road was clearly marked by reflectorized crossbuck signs, to warn motorists of possible oncoming train traffic. The crossing was also marked with signage indicating that it was a "Blind Railroad Crossing". CSX claims that the reflectorized crossbucks had been installed with federal funds made available through the Federal Highway Safety Act of 1973, pursuant to a project which had been approved by the Federal Highway Administration in November, 1975. CSX maintains that ninety percent of the expense of installing the reflectorized crossbuck signs was paid with federal funds. (Decl. of Steven J. Hull; Declaration of Richard Cantwell).

■ The parties do not dispute that the United States Supreme Court has held that claims regarding the adequacy of protection at a crossing are preempted when federal funds are used in the installation of warning devices. *See Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). However, the plaintiffs argue that CSX's motion should be denied because it has not shown that federal funds were spent on the crossing, and CSX bears the burden of proving the preemption defense. The plaintiffs contend that the Hull Declaration does not prove, beyond dispute, that federal funds were used. The Hull Declaration, after discussing the inventory records of the crossing at issue, states:

6. Considering the intent of the project and inventory records for crossing 532328Y before and after that project, I am satisfied that in all likelihood federal funds were used to pay for 90% of the costs to install two reflectorized crossbucks at crossing 532328Y on Monroeville Road in Allen County, Indiana.

The Cantwell Declaration is more convincing, and states:

6. On October 1, 1999, the Monroeville Road crossing near New Haven, Allen

County, Indiana, was equipped with reflectorized crossbuck signs which had been erected pursuant to the project.

7. Pursuant to the project, 90% of the expense of erecting the reflectorized crossbuck signs at the Monroeville Road crossing was paid with federal funds made available through the Highway Safety Act of 1973.

The plaintiffs, however, were not satisfied with Cantwell Declaration, and proceeded to take Richard Cantwell's deposition. In Cantwell's deposition, after a discussion of the general parameters of the project which was undertaken to install, using federal funds, modern reflectorized crossbucks at all of the passive crossings on the Conrail system at the time in the state of Indiana, the following colloquy took place:

Q. So how do you know that the crossbucks [at the Monroeville Road crossing] were implemented pursuant to the [federally funded] project?

A. Because we had an agreement with the State of Indiana that required us to install the reflectorized crossbucks at all of the crossings in the state. And when we successfully completed that initiative, we were then reimbursed by the State for the cost, for most of the cost, 90 percent of the cost.

Q. All right. But again, that doesn't preclude the possibility that a reflectorized crossbuck existed before the program, does it?

A. No, but it's very unlikely that that was the case.

Q. Okay. So let me get your testimony straight. As I understand it, you're saying that it is likely that the crossbuck at the Monroeville Road crossing was implemented pursuant to the project; is that right?

A. Yes.

Q. Likely, but not certain, is that right?

A. It— I'm conjuring up a situation in my mind where, you know, likely and for certain would have to be, you know, defined exactly as to what they mean. There is, you know, I would be very surprised, given the circumstances with which we embarked on this process, that we would have overlooked a crossing at a location such as this.

Q. Okay. In other words, though, you just testified, did you not, that there was a possibility that the crossbuck at the Monroeville Road crossing was not implemented pursuant to the project; is that right?

A. And I'll clarify that by saying I guess it's an extremely remote possibility.

Q. But a possibility nonetheless?

A. Nonetheless.

Cantwell Dep. at 11–13.

On the basis of this testimony, the plaintiffs have requested that the Cantwell Declaration be stricken, that CSX's motion for summary judgment be denied, and that the plaintiffs be awarded attorney fees and costs associated with taking the deposition of Richard Cantwell.

In support of their motion to strike the Cantwell Declaration, the plaintiffs argue that Cantwell's deposition testimony contradicts his Declaration. While it is true that Cantwell testified that there was an "extremely remote possibility" that the crossbucks at the Monroeville Road crossing were not implemented pursuant to the federally funded project, this does not contradict his declaration statement that the crossbucks were federally funded. Rather, Cantwell's deposition testimony merely reflects the truism that practically anything is "extremely remotely possible". The court notes also that Cantwell's testi-

mony was uttered after plaintiffs' counsel badgered him a bit, and continuously restated his answers for him. Accordingly, as there is no contradiction between Cantwell's deposition and his declaration, the motion to strike the declaration will be denied. Additionally, the plaintiffs' motion for fees and costs associated with taking the deposition of Cantwell will likewise be denied.

As part of its reply in support of its motion for summary judgment, CSX has provided the court with the declaration of Lynn Houser, a Regional Engineer of Track for CSX (and its predecessor, Conrail)[2]. In this declaration, Houser states:

> I was familiar with the project between the State of Indiana and Consolidated Rail Corporation (Conrail), a predecessor to CSXT, entered into pursuant to which Federal funds, made available through the Highway Safety Act of 1973, were utilized to erect reflectorized crossbuck signs at various Conrail crossings throughout Indiana, including crossings in my territory and under my supervision, including the crossing known as DOT # 53238Y in Allen County, Indiana.
>
> I recall, and know of my own personal knowledge, that reflectorized crossbucks were installed at this crossing with Federal funds in connection with the project described in the Declarations of Richard Cantwell and Steven J. Hull, which I understand are on file in this case.
>
> I personally recall that the labor performed in connection with installing reflectorized crossbucks at the Monroeville Road crossing, was charged to an outside number in order to obtain reimbursement pursuant to the project referred to. I know that these funds did not come out of our operating budget.
>
> I know of my own personal knowledge that there were no reflectorized crossbucks installed at the Monroeville road crossing other than the installation pursuant to the Federally funded project.

Obviously, CSX has met its burden of showing that there is no dispute that the crossbucks at issue were federally funded. The court notes that the plaintiffs have not offered a shred of evidence in support of their position that the crossbucks at issue were not federally funded. As there is absolutely no basis for a dispute on the issue of whether the crossbucks were federally funded, the court will grant CSX's motion for partial summary judgment on the basis of federal preemption of the plaintiffs' claim regarding the adequacy of the protection devices at the crossing.

### Conclusion

On the basis of the foregoing, CSX's motion for partial summary judgment is hereby GRANTED. Further, the plaintiffs' motion to strike and motion for fees and costs is hereby DENIED, and their motion to publish is hereby DEEMED MOOT.

---

**2.** The plaintiffs filed a motion to strike the Houser Declaration while the case was still in state court. Upon removal to this court, Magistrate Judge Roger B. Cosbey held a preliminary pretrial conference on October 22, 2002. At this conference, Magistrate Cosbey denied the plaintiffs' motion to strike the Houser Declaration, but permitted the renewal of the motion after the plaintiffs had taken Houser's deposition. As no renewal has been filed, Magistrate Cosbey's ruling stands as the final ruling on the issue.