**James GOGUEN as Administrator of the Estate of Ernest GOGUEN, Plaintiff,**

v.

**TEXTRON, INC., and Bridgeport Machines, Inc., Defendants.**

**No. CIV.A.02–40245 FDS.**

United States District Court, D. Massachusetts.

March 10, 2006.

Jeffrey S. Beeler, David W. Heinlein, Heinlein & Beeler, PC, South Natick, MA, for James Goguen, Plaintiff.

Gerald C. DeMaria, John F. Kelleher, Higgins, Cavanagh & Cooney LLP, Providence, RI, for Textron, Inc., Defendant.

### *MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO STRIKE*

SAYLOR, District Judge.

This is a products liability case arising from the allegedly wrongful death of Ernest Goguen. Goguen was killed in an industrial accident while operating a Bridgeport milling machine. Defendant Textron, Inc., has moved for summary judgment on the grounds that it did not manufacture or sell the machine and cannot be held responsible on a theory of successor liability. In support of that motion, Textron appended various exhibits marked A through H. Plaintiff has moved to strike Exhibits B, C, F, and G, on the grounds that Textron neglected to submit any evidence of their authenticity. For the reasons set forth below, the Court will strike Exhibits C and G on grounds of lack of authentication.

### I. *Background*

Defendant Textron, Inc., filed a motion for summary judgment on May 16, 2005. Appended to the memorandum submitted in support of that motion were eight exhibits, marked "A" through "H." No affidavits authenticating those exhibits were submitted

with the motion and the memorandum; indeed, no affidavits of any kind have been submitted.

Plaintiff moved to strike four of the eight exhibits, as follows:

**Exhibit B**. Exhibit B, as submitted with the motion for summary judgment, is entitled "Defendant's Amended Answers to Plaintiff's Interrogatories No. 7(a) and 7(b)." It is a single page long. The text of the document consists of plaintiff's Interrogatory No. 7; defendant's answer to the interrogatory; and defendant's amended answer to the same. The interrogatory asks for the date of manufacture and sale of "the subject machine." In its original answer, Textron stated that "the product was manufactured in November/December, 1968" and "was sold to Gilbert and Richards." In its amended answer, Textron states that "the final assembly of the machine in question occurred in or about October, 1966" and that "the machine was sold to Gilbert and Richards immediately after final assembly."

No signature page or attestation of any kind is included with the document, and there is no certificate of service.

**Exhibit C**. Exhibit C is an excerpt from the "Serial Number Reference Book for Metalworking Machinery—11th Edition," published by the "Machinery Dealers National Association." The excerpts include the cover, the title page, and pages 114–15; the latter contains a list of what appear to be serial numbers for Bridgeport milling machines for each year from 1950 to 1977.

**Exhibit F**. Exhibit F is the voluntary petition of Bridgeport Machines, Inc., filed in the United States Bankruptcy Court for the District of Delaware, filed February 14, 2002.

**Exhibit G**. Exhibit G appears to be all or part of the annual reports of Textron, Inc. for 1967 and 1968.

Textron filed an opposition to the motion to strike on June 29, 2005. Appended to the opposition were (1) a complete copy of the amended interrogatory answers, including the executed signature page, and (2) several additional pages from the Serial Number Reference Book. Again, no authenticating affidavit was included.

## II. *Analysis*

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ Generally speaking, evidence must be admissible at trial in order to be considered on summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49–51 (1st Cir.1990). A significant exception is affidavits; under Rule Fed.R.Civ.P. 56(e), affidavits, although not themselves admissible at trial, may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence. *See id.*[1] A motion to strike is the proper vehicle for challenging the admissibility of materials submitted in support of a motion for summary judgment. 11 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.14[4][a] (3d ed.1997).

■ In order to be admissible at trial, a document must be authenticated. Generally, authentication requires competent testimony concerning the document. *See* Fed.R.Evid. 901(b)(1). Certain categories of documents are self-authenticating under Fed.R.Evid. 902, and require no extrinsic testimony. Each document submitted in support of summary judgment must either be properly authenticated, or must be self-authenticating under the Federal Rules. *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir.2000); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722 at 382 (3d ed.1998). The

---

1. The rule provides in pertinent part:
   Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be.

Textron does not dispute that all of the exhibits at issue had to be authenticated in order for the Court to consider them in connection with its motion for summary judgment. It contends, however, that the interrogatory answers may be considered under Rule 56 and that the other three exhibits are self-authenticating. The Court will consider each in turn.

■ **Exhibit B**. Exhibit B consists of Textron's "Amended Answers to Plaintiff's Interrogatories No. 7(a) and 7(b)." "In summary judgment proceedings, answers to interrogatories are subject to exactly the same infirmities as affidavits." *Garside*, 895 F.2d at 49. Thus, interrogatory answers "should be accorded no probative force where they are … deficient." *Id*. In the form originally submitted to the Court, the interrogatory answer did not state who made the representations and did not indicate whether those representations were verified or were based on personal knowledge. Accordingly, the amended answer, as originally submitted, is defective and cannot be considered by this Court in support of defendant's motion for summary judgment.

■ Defendant attempted to cure this deficiency by attaching the verification page of the amended answer—signed and sworn to on February 5, 2005—to its opposition memorandum. Defendant also included certification that the amended interrogatory answer was served on plaintiff via U.S. mail on February 8, 2005. The Court has discretion to allow a party to cure deficiencies in supporting documentation. *See McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 34 (1st Cir. 1998) (supplemental affidavits in response to motion to strike cured initial failure to authenticate documents); *United States v.*

*Charles George Trucking Co., Inc.*, 624 F.Supp. 1185, 1187 (D.Mass.1986). In the exercise of its discretion, the Court will accept the supplementation here, and will deny plaintiff's motion to strike Exhibit B.

■ **Exhibit C**. Textron contends that the Serial Number Reference Book is a self-authenticating "periodical" within the meaning of Fed.R.Evid. 902(6). The Rule provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" for "[p]rinted materials purporting to be newspapers or periodicals." In essence, Textron contends that because the reference book has been updated every five years, and is now in its eleventh edition, the document qualifies as a "periodical" within the meaning of the rule.

There is little chance that the publication is a forgery. Nonetheless, Rule 902 contains no catch-all or residual provision, such as that set forth in Fed.R.Evid. 807 for hearsay exceptions; in order for the publication to qualify as a self-authenticating document, it must fit within the express provisions of the rule.[2] Thus, by failing to authenticate the document by affidavit, Textron forces the Court to explore the outer limits of the definition of "periodical" under Rule 902(6).

To begin with, and to state the obvious, a book of serial numbers published every five years is not a paradigmatic example of a "periodical." Periodicals typically comprise magazines, trade publications, and scientific and academic journals with weekly, monthly, or quarterly circulation. *See, e.g., Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir.1988) (magazine articles); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 271 (5th Cir.2002) (medical journals); *see also Oxford English Dictionary Online* (draft rev. Dec.2005), at http://www.oed.com (defining periodical as "a magazine or journal issued at regular or stated intervals (usually

---

2. Textron correctly notes that newspapers and periodicals are self-authenticating because there is little danger of forgery. *See* Fed.R.Evid. 902(6) Advisory Committee Notes to 1972 proposed rules ("The likelihood of forgery of newspapers or periodicals is slight indeed. Hence no danger is apparent in receiving them."). It argues that because there is little risk of forgery here, the document should be authenticated without extrinsic evidence. However, the rule does not permit self-authentication in all cases where the risk of forgery is slight; rather, it exempts a small number of specific kinds of documents from the general authentication requirement.

weekly, monthly, or quarterly)"). Moreover, such publications typically include "news or deal[ ] with matters of current interest in any particular sphere." *Oxford English Dictionary Online,* (taken from second print ed.1989) (defining "journal"). The United States Postal Service uses a similar definition of "periodical" to determine mailing rates.[3]

The Court has been unable to locate a single case addressing the question whether a publication that does not take the form of a newspaper, magazine, or journal can be a self-authenticating "periodical" within the meaning of Rule 902(6). Textron argues simply that any publication that is printed or revised on a regular basis qualifies as a "periodical" for these purposes.

It is true that the publication at issue purports to have been published at a specific or regular frequency.[4] The book's introduction—provided in defendant's opposition to the motion to strike, once again without a supporting affidavit—states that the book was "[f]irst published in 1955" and is "published at five-year intervals."[5] The copyright date for the book is 1994. Although arithmetic indicates that the book was not always published at regular five-year intervals,[6] the book does "purport" to be published every five years. *See* Fed.R.Evid. 902(6). The introduction also indicates that the publishers intended to produce a twelfth edition,

although it appears that no such edition has been produced in the last twelve years.[7]

It appears, therefore, that the book at issue was published periodically, although at irregular intervals, and for an apparently indefinite period of time. The question then becomes whether a publication that is not a magazine or journal can qualify as a "periodical" simply by virtue of its actual or purported publication schedule.

The essential problem with that analysis is that it distorts the meaning of "periodical" far beyond its normal confines. A wide variety of publications are published on a regular schedule, including, among other things, telephone directories, almanacs, encyclopedias, trade directories, reference manuals, sports guides, and family holiday newsletters. Some of them might be considered "serial" or "annual" publications. None would be considered "periodicals" in ordinary English usage.

Textron's position thus requires the Court to impart a meaning to a word that it does not ordinarily carry, without even the slightest suggestion that Congress or the drafters of the rule intended such a result. When words become unduly elastic, rules and laws begin to lose their meaning. At the very least, if the language of a rule is to be stretched and distorted beyond its normal meaning, there should be good cause to do

**3.** The USPS Domestic Mail Manual, incorporated by reference into 39 C.F.R. § 111.1, includes the following criteria to determine whether a publication qualifies for the discounted "Periodicals" mailing rate:

> For Periodicals purposes, [a] periodical publication or periodical is one published at a stated frequency with the intent to continue publication indefinitely, with these characteristics:
> a. The continuity of the periodical must show from issue to issue. Continuity is shown by serialization of articles or by successive issues carrying the same style, format, theme, or subject matter.
> b. The primary purpose of the periodical must be the transmission of information.
> c. The content of the periodical may consist of original or reprinted articles on one topic or many topics, listings, photographs, illustrations, graphs, a combination of advertising and nonadvertising matter, comic strips, legal notices, editorial material, cartoons, or other subject matter.

> d. The primary distribution of each issue must be made before that of each succeeding issue.

**4.** There is no evidence in the record as to the degree of change of the content from edition to edition. Presumably, the content does not change materially, other than corrections and updates.

**5.** According to its online catalogue, the Library of Congress classifies the book—based on the fifth edition—as a "Serial (Periodical, Newspaper, etc.)" published on a quinquennial basis. *See* http://www.loc.gov/index.html.

**6.** If eleventh edition was published in the year of the copyright (1994), then there were eleven editions printed over approximately 39 years—roughly one edition every three-and-a-half years.

**7.** Defendant states in his opposition memorandum that the eleventh edition is the most current edition.

so. A party's unexplained failure to comply with a very simple rule is not enough.

The Court takes no pleasure in striking an apparently relevant piece of evidence on such superficially trivial grounds, but neither is it willing to ignore the clear command of the Federal Rules of Evidence. Accordingly, plaintiff's motion to strike will be granted as to Exhibit C.

**Exhibit F.** Exhibit F is the voluntary petition of Bridgeport Machines, Inc., filed in the United States Bankruptcy Court for the District of Delaware on February 14, 2002. The fact that Bridgeport Machines, Inc., petitioned for Chapter 11 protection is not in dispute in this case. Although plaintiff objects to the exhibit on authentication grounds, the Court may take judicial notice of documents filed in another court to establish the fact of litigation—though not necessarily for the truth of the matters contained within those documents. *See Kowalski v. Gagne*, 914 F.2d 299, 305–06 (1st Cir.1990) (approving trial court's judicial notice of state court convictions when certified copy of conviction was not provided, and collecting cases); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir.1992); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 201.12[3] at 201–38 to 201–39 (2d ed.2005).

Accordingly, the Court will take judicial notice of the bankruptcy court filing. Plaintiff's motion to strike Exhibit F will be denied.

**Exhibit G.** Exhibit G appears to be all or part of the 1968 and 1967 annual reports of Textron, Inc. Textron first contends that the document is a self-authenticating "periodical," because Textron (like all public companies) publishes such a report regularly each year.

As noted above, however broad the definition of "periodical" may be, it cannot be stretched to include every single document that is published on a regular basis. The annual report of a publicly-traded company is well outside any common understanding of the term "periodical." Accordingly, Exhibit G is not a self-authenticating document within the meaning of Fed.R.Evid. 902(6).

Textron argues in the alternative that the document is an "ancient document" within the meaning of Fed.R.Evid. 901(b)(8). That rule provides that a document may be authenticated if its condition would create no suspicion concerning its authenticity, if it was in a place where, if authentic, it would likely be, and if it has been in existence for more than twenty years at the time it is submitted. Textron states that the document "was taken from defendant's files, which house a copy of every annual report [it] ever produced."

What Textron neglects to point out is that it has submitted no testimony from any witness, much less any competent witness, that provides the necessary authentication under Rule 901(b)(8). A simple statement in an affidavit—e.g., "Attached as Exhibit G is a copy of the 1968 Textron Annual Report, taken from the files of Textron"—would have been enough. No such affidavit has been submitted to the Court. In the absence of any authenticating evidence, the document must be stricken.

\* \* \* \* \* \*

Textron's failure to adhere to a simple rule has put the Court in a difficult position. There is little possibility that the two stricken documents at issue are not authentic, and they are apparently relevant and admissible under the hearsay rules. If an otherwise-valid motion for summary judgment fails without that evidence, the parties and the Court may incur considerable unnecessary burden and expense, and indeed may be *forced into an unnecessary trial.*

On the other hand, the Court cannot accept the evidence without contorting the express requirements of the Federal Rules of Evidence. As noted, Rule 902 contains no catch-all exception. Perhaps the drafters of the rules thought that the authentication requirement was so easy to meet in most instances that there was no need for such an exception. In any event, if the enforcement of the rules under these circumstances seems impractical or unduly formalistic, it is only because the Court was left with no real alternative.

### *Order*

For the reasons stated above, Plaintiff's Motion to Strike Exhibits Attached by the Defendant to Its Motion for Summary Judgment is hereby GRANTED in part and DENIED in part. Exhibits C and G shall be stricken from the record on Defendant Textron, Inc.'s Motion for Summary Judgment.

**So Ordered.**