DA 06-0649

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 225

AMELIA M. SMITH by and through her mother and
next friend SAMANTHA R. REINERT, conservator
and personal representative of the estate of PHILLIP
DAVID SMITH, deceased,

        Plaintiff and Appellant,

   v.

THE BURLINGTON NORTHERN AND SANTA FE
RAILWAY COMPANY, DON BOESPFLUG
and LANCE VALLONE,

        Defendants and Appellees.

FILED

JUN 2 0 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 2004-888
                    Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            A. Clifford Edwards, Triel D. Culver, John Heenan, Edwards, Frickle,
            Anner-Hughes & Culver, Billings, Montana

      For Appellee:

            Randy J. Cox, Matthew B. Hayhurst, Boone Karlberg, P.C., Missoula,
            Montana

                      Submitted on Briefs:  October 31, 2007

                                 Decided:  June 20, 2008

Filed:

                                _____
                                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Amelia Smith appeals a decision of the Thirteenth Judicial District Court granting Burlington Northern and Santa Fe Railway Company's (BNSF) motion for partial summary judgment. We reverse the grant of summary judgment and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 13, 2002, a twenty-six-year-old man named Phillip Smith was killed when his automobile collided with a BNSF train at the Hesper railroad crossing outside of Billings, Montana. On August 25, 2004, his daughter, appellant Amelia Smith (Smith), filed a wrongful death and survival action against BNSF in the District Court of the Thirteenth Judicial District, Yellowstone County. Smith's suit sought compensatory and punitive damages based on BNSF's alleged negligence in the maintenance of the Hesper crossing and its negligent operation of the train involved in the collision. A significant portion of Smith's claims revolved around allegations that BNSF was negligent in the installation of warning devices at the Hesper crossing which would adequately protect people who were traveling along the highway.

¶3 On April 26, 2006, BNSF moved for partial summary judgment seeking an order that Smith's state law claims concerning the adequacy of the warning devices at the Hesper crossing were preempted by federal law in accordance with *Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 120 S. Ct. 1467 (2000). In that case, the United States Supreme Court held that when federal funds are used to install warning devices at railroad crossings, the Federal Railway Safety Act of 1970 (FRSA), Pub. L. No. 91-458,

2

84 Stat. 971 (1970), preempts state law tort claims. *Shanklin*, 529 U.S. at 357, 120 S. Ct. at 1476. It was BNSF's contention that federal funds had been used to upgrade the Hesper crossing under project RRP 4139, a joint statewide project between the Montana Department of Transportation (MDOT) and the Federal Highway Administration (FHWA) under the Federal Rail-Highway Crossings Program (Crossings Program). Project RRP 4139 was designed to replace existing crossbucks at designated railway crossings with double reflectorized crossbucks—i.e., crossbucks with reflective material on the back and front of both the crossbucks—in accordance with the standards set forth in the Manual on Uniform Traffic Control Devices. BNSF maintained that double reflectorized crossbucks had been installed at Hesper crossing under project RRP 4139, and thus Smith's state law tort claims were preempted by federal law as set forth in *Shanklin*.

¶4 The District Court held a hearing on the motion on July 21, and granted partial summary judgment to BNSF on August 3, 2006. The District Court found that those state law tort claims which were premised upon the adequacy of the warning devices at Hesper crossing were federally preempted under *Shanklin* because: (1) the federal government had approved a project to install warning devices at several hundred railroad crossings in Montana; (2) these improvements were actually completed; and (3) federal funds were actually used to complete these projects, including the installation of double reflectorized crossbucks at the Hesper crossing. Although Smith had alleged some state law claims which were unaffected by this ruling, the grant of partial summary judgment effectively disposed of a huge portion of Smith's case against BNSF. Therefore, on

August 14, 2006, the District Court certified its ruling on the federal preemption issue as a final judgment pursuant to M. R. Civ. P. 54(b).

¶5 A notice of appeal was filed with this Court on August 26, 2006. On August 8, 2007, after the case was fully briefed, Smith petitioned this Court for leave to file supplemental briefs. Smith argued that Section 1528 of the "Implementing Recommendations of the 9/11 Commission Act of 2007" (9/11 Act), Pub. L. No. 110-53, 121 Stat. 266 (2007), signed into law by President Bush on August 3, 2007, essentially rendered moot the *Shanklin* preemption analysis upon which the District Court based its decision to grant partial summary judgment. Smith asked us to reexamine the continued viability of the *Shanklin* preemption analysis, and, consequently, the legal basis for the District Court's grant of summary judgment. We granted Smith's motion, allowing BNSF and Smith to simultaneously file supplemental briefs "directed solely to the ramification of the [9/11] Act upon this case."

¶6 Both parties have filed supplemental briefs on this issue, and the matter is now properly before this Court.

## ISSUES

¶7 We state the issues on appeal as follows:

¶8 **Issue One:** Does Section 1528 of the 9/11 Act overrule the federal preemption analysis from *Norfolk Southern Ry. Co. v. Shanklin?*

¶9 **Issue Two:** Did the District Court err when it granted partial summary judgment to BNSF?

## STANDARD OF REVIEW

4

¶10 We review de novo a district court's grant of summary judgment, using the same standards applied by the district court under M. R. Civ. P. 56. *Rich v. Ellingson*, 2007 MT 346, ¶ 12, 340 Mont. 285, ¶ 12, 174 P.3d 491, ¶ 12. The moving party has the burden of establishing the absence of a genuine issue of material fact, and entitlement to judgment as a matter of law. *Rich*, ¶ 12. Once the moving party has met this burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Rich*, ¶ 12. "The non-moving party must set forth specific facts and cannot simply rely upon their pleadings, nor upon speculative, fanciful, or conclusory statements." *Hiebert v. Cascade Co.*, 2002 MT 233, ¶ 21, 311 Mont. 471, ¶ 21, 56 P.3d 848, ¶ 21 (quotation omitted).

¶11 We review the conclusions of law upon which the district court bases its decision to determine if they are correct. *Rich*, ¶ 12.

## DISCUSSION

¶12 **Issue One:** *Does Section 1528 of the 9/11 Act overrule the federal preemption analysis from Norfolk Southern Ry. Co. v. Shanklin?*

¶13 In *Shanklin* the Supreme Court held that "[w]hen the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds . . . [federal law] establish[es] a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject . . . [and] pre-empts state tort actions." *Shanklin*, 529 U.S. at 357-58, 120 S. Ct. at 1476. In addition to the preemptive force of the Supremacy Clause to the U.S Constitution, U.S. Const. Art. IV. cl. 2, the *Shanklin* decision rested on two statutory grounds: (1) the "preemption clause" of FRSA,

5

49 U.S.C. § 20106 (1994); and (2) regulations promulgated by the FHWA under the authority of the Secretary of Transportation—found at 23 C.F.R. § 646.214(b)(3) and (4) (1999)—concerning the design and adequacy of railway crossing warning devices installed under the Crossings Program. *Shanklin*, 529 U.S. at 347-49, 120 S. Ct. at 1471-72.

¶14    Section 1528 of the 9/11 Act amended the preemption clause of FRSA upon which the holding in *Shanklin* was premised. From the time *Shanklin* was decided in 2000 until the passage of the 9/11 Act in 2007, the FRSA preemption clause read as follows:

### § 20106 National uniformity of regulation.

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order--
(1) is necessary to eliminate or reduce an essentially local safety hazard;
(2) is not incompatible with a law, regulation, or order of the United States Government; and
(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (1994).

¶15    Section 1528 of the 9/11 Act (Section 1528) renumbered, but did not substantively alter, the original preemption clause. After the passage of Section 1528, the FRSA preemption clause reads as follows:

### § 20106 Preemption.

(a) National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

6

**(2)** A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

**(A)** is necessary to eliminate or reduce an essentially local safety or security hazard;

**(B)** is not incompatible with a law, regulation, or order of the United States Government; and

**(C)** does not unreasonably burden interstate commerce.

49 U.S.C.A. § 20106(a) (West Supp. 2007).

¶16    Section 1528 did, however, add an additional subsection to the FRSA preemption clause which clarifies its scope.

> **(b) Clarification regarding State law causes of action.--(1)** Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
> **(A)** has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
> **(B)** has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
> **(C)** has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
> **(2)** This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

49 U.S.C.A. § 20106(b)(1) and (2) (West Supp. 2007).

¶17    In her supplemental brief, Smith argues that the Section 1528 amendments to FRSA demonstrate that "Congress has spoken clearly and unambiguously, <u>against</u> federal

7

preemption of claims like Smith's under the [FRSA]." Smith asserts that § 20106(b) is in essence an "anti-preemption clause" and "sends a loud and clear message that 49 U.S.C. § 20106 in no way preempts state common law claims such as Amelia Smith's state court action."

¶18 BNSF maintains Section 1528 does not effect a substantive change to the preemption clause, but instead simply clarifies the scope of FRSA's preemption clause. More importantly, BNSF points out that subsection (b)(1)(C) of the clarifying amendment specifically states that a state claim survives only if it is "not incompatible with subsection (a)(2)." 49 U.S.C.A. § 20106(b)(1)(C) (West Supp. 2007). BNSF maintains that subsection (a)(2) refers directly back to the original preemption clause which was analyzed in *Shanklin*, meaning that unless one of the local hazard exceptions to preemption from subsections (a)(2)(A), (B), or (C) apply, the original FRSA preemption analysis from *Shanklin* remains in force.

¶19 As further support of its argument that Section 1528 did not overrule the *Shanklin* preemption analysis, BNSF points to the House of Representatives Conference Report on Section 1528 which specifically states that the Section 1528 amendment was passed "to rectify the federal court decisions related to the Minot, North Dakota accident that are in conflict with precedent." H.R. Conf. Rpt. 110-259 at 351 (July 25, 2007) (reprinted in 153 Cong. Rec. H8589-90 (daily ed. July 25, 2007)). The Minot accident was an incident where a train derailment near Minot, North Dakota released a cloud of anhydrous ammonia which allegedly caused multiple personal injuries and incidents of property damage. Claims brought against the Canadian Pacific Railway Company by the affected

individuals were dismissed by federal district courts on the grounds that they were federally preempted under *Shanklin*. *See e.g., Mehl v. Canadian Pacific Ry. Ltd.*, 417 F. Supp. 2d 1104 (D.N.D. 2006); *Lundeen v. Canadian Pacific Ry. Co.*, 507 F. Supp. 2d 1006 (D. Minn. 2007). The claimants in *Mehl* and *Lundeen* alleged that Canadian Pacific had breached a federal standard of care, *Mehl*, 417 F. Supp. 2d at 1116, and its own internal procedures, *Lundeen*, 507 F. Supp. 2d at 1013, ultimately leading to the derailment. However, the federal district courts in each case found that these claims were preempted under the FRSA preemption clause. The Section 1528 amendments to FRSA remedied these situations by limiting its preemptive effect in cases where the claimant alleges the defendant breached a federal standard of care or its own operating procedures. 49 U.S.C.A. § 201060(b)(1)(A) and (B) (West Supp. 2007).

¶20 In light of the fact that the Conference Report explicitly states that Section 1528 was aimed at overruling these federal court decisions, BNSF argues it makes little sense to maintain that Congress also meant to overrule *Shanklin* but yet somehow failed to mention it, especially given the fact that *Shanklin* is a landmark decision that has been followed by numerous courts over the years. As further support for its construction of Section 1528, BNSF points to a proposed provision to the 9/11 Act by House Representative Bennie Thompson (D-MS) which would have eliminated federal preemption of state law claims under FRSA "unless compliance with State law would make compliance with Federal requirements impossible." H.R. 1401, 110th Cong. § 3(a) (March 28, 2007). As BNSF notes, the Thompson proposal was rejected by the Senate and President Bush in the final version of the 9/11 Act, thus lending further support to its

9

view that Congress did not overrule the *Shanklin* preemption analysis in enacting Section 1528.

¶21 In order to demonstrate that Section 1528 has overruled the preemption analysis from *Shanklin*, Smith has the burden of proving that Congress intended this change when it passed Section 1528. *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S. Ct. 1981, 1991 (1989); *Tome v. United States*, 513 U.S. 150, 163, 115 S. Ct. 696, 704 (1995). Smith, however, has failed to meet this burden.

¶22 The starting point for statutory interpretation is the plain language of the statute itself. *United States v. Hanousek*, 176 F.3d 1116, 1120 (9th Cir. 1999); *Sturchio v. Wausau Underwriters Ins. Co.*, 2007 MT 311, ¶ 10, 340 Mont. 141, ¶ 10, 172 P.3d 1260, ¶ 10. In this case, the plain language of Section 1528 supports BNSF's construction of the statute. Because Smith's claims allege BNSF violated state tort law, and not a federal standard of care or its own plan, rule or standard, the exceptions listed in subsections (b)(1)(A) or (B) do not apply to her claims (*see* ¶ 16); thus, Smith's state law claims will survive federal preemption only if they are "not incompatible with subsection (a)(2)." 49 U.S.C.A. § 20106(b)(1)(C) (West Supp. 2007). Subsection (a)(2), however, makes clear that if a federal law, regulation, or order has been adopted by the Secretary of Transportation, then a state law or standard respecting that subject matter is preempted. 49 U.S.C.A. § 20106(a)(2) (West Supp. 2007). Federal regulations concerning the design and adequacy of railway crossing warning devices have been promulgated by the FHWA, which acts under the authority of the Secretary of Transportation. *See* ¶ 13. Thus,

Smith's claims will be preempted under Section 1528 provided the criteria discussed in *Shanklin* have been satisfied.

¶23 We find BNSF's supporting arguments which cite to the legislative history of Section 1528 persuasive as well. The final version of Section 1528 rejected a proposal which would have eliminated federal preemption outright unless it made compliance with federal requirements impossible. *See* ¶ 20. As BNSF notes, Congress is generally presumed "knowledgeable about existing law pertinent to the legislation it enacts . . . ." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85, 108 S. Ct. 1704, 1712 (1988). Moreover, Congress "does not intend *sub silentio* to enact statutory language that it has earlier disregarded in favor of other language." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442-43, 107 S. Ct. 1207, 1219 (1987) (quotation omitted). The Conference Report to Section 1528 explicitly states it is enacted to remedy the rulings from the Minot derailment federal district court cases, and makes no mention of *Shanklin*. In light of these facts, Smith's argument that Section 1528 was enacted to overrule *Shanklin* and its progeny finds scant support and is contrary to settled law. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat. Bank v. New Jersey Dept. of Envtl. Protec.*, 474 U.S. 494, 501, 106 S. Ct. 755, 759 (1986) (citing *Edmonds v. Compagnie Generale Transatlantique*, 433 U.S. 256, 266-67, 99 S. Ct. 2753, 2759-60 (1979)).

11

¶24 For these reasons, we hold that Section 1528 of the 9/11 Act did not overrule the FRSA preemption analysis as announced in *Shanklin*. Therefore, we now turn to the merits of Smith's original appeal.

¶25 **Issue Two:** *Did the District Court err when it granted partial summary judgment to BNSF?*

¶26 In granting partial summary judgment to BNSF, the District Court found BNSF offered persuasive evidence demonstrating that federal funds were expended to upgrade the Hesper crossing. The first piece of evidence relied upon by the District Court was an affidavit submitted by BNSF in conjunction with its summary judgment motion from John Althof (Althof), an employee of MDOT who had the responsibility of overseeing and managing railroad improvement programs throughout Montana. Although Althof did not have personal knowledge that federal funds were expended at the Hesper crossing, he reviewed a number of documents related to project RRP 4139. Of those documents, only the following were attached to his affidavit: (1) an agreement between the State and BNSF dated September 30, 1988 (Agreement), which stated that all public crossings in Montana would receive federal funds for project RRP 4139; (2) an unverified lump sum estimate for project RRP 4139; and (3) a blank railroad crossing installation form.

¶27 Based on his review of various records related to the project, Althof stated in his affidavit that the State of Montana undertook project RRP 4139 in 1988, which included the installation of double reflectorized crossbucks at seven hundred and twenty-three crossings in the BNSF Montana division of the State of Montana. He further stated that the federal government approved the use of federal funds for project RRP 4139 through

12

the FHWA. Althof additionally stated that the Hesper crossing was designated United States Department of Transportation Crossing No. 088451Y, and that BNSF had a bill showing that crossing No. 088451Y was included in project RRP 4139. Thus, Althof's review of the records pertaining to this case led him to conclude that federal funds were used in the installation of double reflectorized crossbucks at the Hesper crossing. In its order, the District Court noted that this affidavit was very similar to an affidavit cited in *Lee v. Burlington Northern Santa Fe Ry. Co.*, 245 F.3d 1102 (9th Cir. 2001), where Judge Molloy had found that the *Shanklin* analysis was satisfied and similar claims preempted.

¶28 In addition to the affidavit itself, the District Court found persuasive other documentary evidence of the RRP 4139 project which BNSF submitted in conjunction with its summary judgment motion. One piece of evidence, which was attached to BNSF's reply brief, was a "Certificate of Completion," dated May 23, 1991, which stated that that project RRP 4139 had been inspected and its completion duly verified by state officials with MDOT. Another piece of evidence, which was originally attached to BNSF's motion for summary judgment, was a bill from BNSF to the State, dated May 8, 1989, in the amount of $57,327.20, which showed that BNSF billed the State for the installation of double reflectorized crossbucks at the Hesper crossing, which was designated at milepost #4.1, with the number 088-451-Y.

¶29 The District Court also relied on an affidavit supplied by BNSF from Verle Ostrander (Ostrander), a former employee of BNSF who stated he was personally familiar with the railroad grade crossbuck update project undertaken in Montana between 1988 and 1989. Ostrander stated that he also had reviewed the documents related to

13

project RRP 4139, as well as the Althof affidavit and a similar affidavit relied upon by the federal district court in *Lee*, and concluded that double reflectorized crossbucks were installed at the Hesper crossing by the use of federal funds.

¶30 Lastly, the District Court relied on a deposition taken by Smith of Robert Tholt (Tholt), the MDOT construction supervisor who was one of the persons who had signed the Certificate of Completion in 1991. Tholt stated in his deposition that although he did not have any specific memory of the Hesper crossing, his staff would have verified all the documentation related to that project, and that the project at the Hesper crossing would have been properly checked before a Certificate of Completion had been signed and approved by him. Like Althof and Ostrander, Tholt's deposition was also based on a review of documents supplied by BNSF related to the alleged upgrade at the Hesper crossing under project RRP 4139.

¶31 Smith challenges the propriety of the District Court reliance on these affidavits and supporting exhibits, arguing that they should have been stricken from its consideration by virtue of M. R. Civ. P. 56(e). For authority on this point, Smith cites to the plain language of M. R. Civ. P. 56(e) and our decisions addressing the evidentiary requirements of this Rule in *Hiebert* and *Disler v. Ford Motor Credit Co.*, 2000 MT 304, 302 Mont. 391, 15 P.3d 864. In particular, Smith alleges that none of the affiants actually had personal knowledge that federal funds were spent in upgrading the Hesper crossing and, further, that they did not have personal knowledge sufficient to establish the genuineness and authenticity of many of the documents which were considered by the District Court in the summary judgment proceedings. For instance, in Althof's

14

deposition he conceded that he had no personal knowledge that federal funds actually went into the improvements at Hesper crossing. Althof did, however, testify to the genuineness of the Agreement. Similarly, while Tholt had signed the Certificate of Completion, upon examination in his deposition he stated that his staff had actually prepared the document and he did not have any personal knowledge as to whether the project was completed, but rather assumed his staff had properly reviewed all the project documents. With respect to Ostrander's affidavit, Smith argues in the first instance that it was improperly considered by the District Court because this affidavit was first presented in BNSF's reply brief to the partial summary judgment motion and Smith was never given an opportunity to depose him. Additionally, Smith points out that nowhere in his affidavit does Ostrander state that he had personal knowledge that federal funds were used at the Hesper crossing. More importantly, however, Smith maintains that these affiants lacked the requisite personal knowledge which would allow them to testify to the genuineness and contents of the documents upon which they relied in making their sworn statements as required under M. R. Civ. P. 56(e) and *Hiebert*.

¶32 Thus, Smith argues, because these affidavits and supporting exhibits were not based on the personal knowledge of any of the affiants as required under M. R. Civ. P. 56(e), they were improperly considered by the District Court. Smith maintains that under *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 670 (La. 2000), *Mo. Pacific R.R. Co. v. Limmer*, 180 S.W.3d 803 (Tex. App. 14 Dist. 2005), and *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 767 N.E.2d 707 (Ohio 2002), BNSF was required to "conclusively prove" that federal funds were used to upgrade the Hesper crossing, but has failed to meet this

15

evidentiary burden under M. R. Civ. P. 56(e) and thus is not entitled to summary judgment.

¶33 Additionally, Smith argues that genuine issues of material fact regarding the use of federal funds at the Hesper crossing exist in this case which preclude the District Court from granting summary judgment to BNSF. For instance, Smith points out that under the terms of the Certificate of Completion, there shall be submitted an "Exhibit C" showing that the particular crossing was actually upgraded. In this case, BNSF was unable to provide an Exhibit C for the Hesper crossing. Moreover, Smith contacted officials from MDOT to inquire whether the State ever actually paid BNSF for work done at the Hesper crossing under RRP 4139, or whether the State had any actual knowledge as to when such double reflectorized crossbucks were installed. MDOT, however, did not have in its records a definitive answer to this question. Lastly, Smith maintains that an affidavit it submitted from a Ms. Erna Love, a longtime resident of the area around Hesper crossing, created a genuine issue of material fact because she stated that crossbucks had been at the Hesper crossing since 1975.

¶34 Accordingly, Smith argues that the District Court erred in granting partial summary judgment to BNSF because BNSF did not comply with the requirements of M. R. Civ. P. 56(e), and failed to demonstrate a complete absence of any genuine issue of material fact with regard to whether federal funds were actually expended to install double reflectorized crossbucks at the Hesper crossing. Smith argues that, at a minimum, BNSF should be required to prove to a jury that federal funds were expended at the Hesper crossing improvements, thus triggering federal law preemption under *Shanklin*,

16

and maintains that a grant of partial summary judgment on this issue was error. Accordingly, Smith asks us to reverse the grant of partial summary judgment and remand the case for further proceedings. Further, Smith requests that we hold that BNSF has failed as matter of law on its federal preemption argument, and that this defense be stricken, thereby allowing Smith to pursue her state law claims against BNSF.

¶35 BNSF urges us to affirm the District Court. BNSF maintains it presented sufficient evidence to prove that federal funds were used at the Hesper crossing through project RRP 4139, thus triggering preemption under *Shanklin*. BNSF points to a number cases where courts have found that federal preemption under *Shanklin* was triggered when a party presented evidence that federal funding was approved in a state-wide project, and that a particular crossing was included in that project. *E.g.*, *O'Bannon v. Union Pacific R.R. Co.*, 169 F.3d 1088 (8th Cir. 1999); *McDaniel v. Southern Pacific Transp.*, 932 F. Supp. 163 (N.D. Tex. 1995); *Hargrove v. Missouri Pacific R.R. Co.*, 925 So.2d 25 (La. App. 3 Cir. 2006); *Wagoner v. CSX Transp., Inc.*, 246 F. Supp. 2d 1002 (N. D. Ind. 2003); *Security First Bank v. Burlington Northern and Santa Fe Ry. Co.*, 213 F. Supp. 2d 1087 (D. Neb. 2002); *Lee*, 245 F.3d 1102. BNSF further asserts that the District Court was correct to refuse to impose a special evidentiary requirement by requiring BNSF to "conclusively prove" that federal funds were actually spent at Hesper crossing. BNSF argues that such an evidentiary ruling would be at odds with other courts that have analyzed federal preemption on summary judgment motions under *Shanklin*, such as *O'Bannon* and *Wagoner*. In this regard, BNSF argues that *Limmer* and *Duncan* are inapposite. BNSF also argues that imposing a higher evidentiary burden on its

federal preemption defense would impermissibly defeat the federal policy of preemption as expressed in FRSA, and cites to *Davis v. Wechsler*, 263 U.S. 22, 44 S. Ct. 13 (1923), and *Brown v. Western Ry. Of Al.*, 338 U.S. 294, 70 S. Ct. 105 (1950) in support of this position.

¶36 BNSF maintains that by virtue of the affidavits and the documentary exhibits attached thereto, it has met its burden under M. R. Civ. P. 56 and established that federal funds were used to install double reflectorized crossbucks at Hesper crossing. Moreover, BNSF argues that because Althof's testimony was based on matters within the scope of his duties as MDOT manager of grade crossings improvements, it should be considered based on his personal knowledge under *Barthelemy v. Air Line Pilots Assn.*, 897 F.2d 999 (9th Cir. 1990), and that the District Court did not abuse its discretion in considering his affidavit in support of BNSF's summary judgment motion. Similarly, BNSF objects to Smith's suggestion that the state and business records attached to BNSF's motion for summary judgment should be stricken, asserting that they fall within the M. R. Evid. 803 exception to the hearsay rule for public and business records.

¶37 As a result, BNSF argues that it has shifted the burden to Smith to demonstrate a genuine issue of material fact, and Smith has failed to do so. BNSF argues that the lack of an Exhibit C, *see* ¶ 33, does not raise a genuine issue of material fact because, even though this document cannot be produced, BNSF did produce the Certificate of Completion showing that project RRP 4139 had been completed. BNSF points to the deposition of Tholt, wherein he stated that such a certificate would not have been issued by MDOT and signed by him unless that project had been fully and satisfactorily

18

completed. BNSF argues that the installation of double reflectorized crossbucks at the Hesper crossing was also confirmed by an inventory taken of that site by MDOT on March 1, 1989. BSNF asserts this is confirmed by Ostrander's affidavit wherein he stated that such an inventory reflects that project RRP 4139 had been completed at the Hesper crossing. BNSF argues that such state documents are entitled to a presumption of regularity, making summary judgment proper. Lastly, BNSF maintains the affidavit of Erna Love does not raise a genuine issue of material fact for the simple reason that her affidavit says nothing about the presence of double reflectorized crossbucks (which BNSF maintains were installed under project RRP 4139, *see* ¶ 3), but only that there were crossbucks present at the Hesper crossing prior to the upgrade under RRP 4139.

¶38    The threshold question before us is whether BNSF met its evidentiary burden under M. R. Civ. P. 56 by demonstrating the absence of a genuine issue of material fact, and entitlement to judgment as a matter of law. *Rich*, ¶ 12. As we stated in *Hiebert* "[i]t is well-settled that during summary judgment proceedings, the parties must limit affidavits to evidence that would be otherwise admissible pursuant to the rules of evidence." *Hiebert*, ¶ 29. For affidavits to be admissible, they must be based on personal knowledge as provided for in M. R. Civ. P. 56(e), which reads in pertinent part as follows:

> **Rule 56(e).  Form of affidavits -- further testimony -- defense required.**  Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

¶39 This "personal knowledge" must be based on "firsthand observation or experience, as distinguished from a belief based on what someone else has said." *Hiebert*, ¶ 30 (quotation omitted). Affidavits made without personal knowledge and based on hearsay evidence should not be considered in a motion for summary judgment. *Hiebert*, ¶ 30. However, exhibits can be submitted in support of an affidavit for purposes of M. R. Civ. P. 56, so long as they are accompanied by an affidavit or sworn discovery response of an individual with personal knowledge of their genuineness, relevance, and contents, or there is a foundation laid for such exhibits "based on any exception to the rule excluding hearsay evidence." *Hiebert*, ¶¶ 30-32; *Disler*, ¶ 11.

¶40 BNSF suggests in its briefs that a district court's evidentiary rulings on summary judgment motions should be reviewed under the abuse of discretion standard; however, it cites no authority which directly supports this proposition save for *Barthelemy*. *Barthelemy* does seem to suggest that evidentiary rulings in the summary judgment context are reviewed under the abuse of discretion standard. *Barthelemy*, 897 F.2d at 1018 (citing *Kisor v. Johns-Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir. 1986)). However, a cursory review of *Barthelemy* shows that it is flawed precedent on this point for the simple reason that *Kisor*, upon which *Barthelemy* is premised, did not involve evidentiary rulings in the summary judgment context, but instead concerned an evidentiary ruling in the course of a normal jury trial. *Kisor*, 783 F.2d at 1338-40. Thus, we do not find *Barthelemy* persuasive authority. While we acknowledge that some courts have applied the abuse of discretion standard to evidentiary rulings in the context of

summary judgment proceedings, *e.g.*, *International Biochemical Industries, Inc. v. Jamestown Management Corp.*, 586 S.E.2d 442, 447 (Ga. App. 2003), we believe this approach is at odds with the fact that we review summary judgment decisions under a de novo standard of review.

¶41    It is true that we do review some ancillary rulings in the summary judgment context under the abuse of discretion standard. *Envtl. Contractors, LLC v. Moon*, 1999 MT 178, ¶ 19, 295 Mont. 268, ¶ 19, 983 P.2d 390, ¶ 19 (reviewing the denial of a motion to continue discovery filed during summary judgment proceedings for an abuse of discretion). However, we have never held that evidentiary rulings going directly to the propriety of summary judgment are also reviewed for an abuse of discretion. Instead, under our case law, strict compliance with Rule 56(e) is required, and we review de novo whether the evidentiary requirements of Rule 56(e) have been satisfied. In *Herron v. Columbus Hosp.*, 284 Mont. 190, 943 P.2d 1272 (1997), for instance, we affirmed a district court grant of summary judgment, finding that the moving party had met its initial burden, but the non-moving party failed to raise a genuine issue of material fact because his affidavit did not comply with Rule 56(e). "An affidavit submitted in a summary judgment proceeding must be based on the affiant's personal knowledge of the facts set forth. Rule 56(e), M.R.Civ.P. If an affidavit does not comply with the requirements of Rule 56(e), it does not raise a genuine issue of material fact as a matter of law." *Herron*, 284 Mont. at 196, 943 P.2d at 1276 (citing *Cooper v. Sisters of Charity*, 265 Mont. 205, 208, 875 P.2d 352, 354 (1994)).

¶42   This same standard should also apply to a party moving for summary judgment and attempting to demonstrate an absence of a genuine issue of material fact. Accordingly, we hold that if a moving party's affidavit does not comply with the requirements of M R. Civ. P. 56(e), it does not demonstrate the absence of a genuine issue of material fact as a matter of law.

¶43   In this case, the affiants' "personal knowledge" was not from firsthand knowledge or experience, but was based upon a review of documents related to project RRP 4139 and the alleged installation of double reflectorized crossbucks at the Hesper crossing. For instance, the affidavit of Althof was based on his review of several documents which were attached to his affidavit:  The Agreement between the State and BNSF for the statewide installation of crossbucks under project RRP 4139; various records produced by BNSF related to project RRP 4139, including the Certificate of Completion; and a bill from BNSF to the State for the installation of double reflectorized crossbucks at the Hesper crossing.  Althof establishes an adequate foundation for the Agreement because he states that "it is a true and correct copy of the Agreement for Montana Highway Project RRP 4139."   However, he does not establish a foundation for either the Certificate of Completion, the bill from BNSF, or the other documents upon which he relied.[1]

¶44   In his affidavit Ostrander reviewed the Althof affidavit and the affidavit submitted in *Lee* (*see* ¶ 29), as well as a grade crossing inventory form of the Hesper crossing dated

---

[1] In his affidavit, Althof states that he has "reviewed the records of the Montana Department of Transportation regarding the railroad crossing on Hesper Road in Yellowstone County, Montana." However, these records are neither further specified nor attached to his affidavit.

22

March 1, 1989. Ostrander did not attest to the genuineness of the exhibits upon which he and the other affiants relied, nor did BNSF lay a foundation for these documents under an exception to the hearsay rule. Similarly, the deposition of Tholt shows that his testimony was based upon a number of documents prepared by BNSF, to which he could not personally testify as to their genuineness and contents, and which also had not been admitted under an exception to the hearsay rule. Because Tholt signed the Certificate of Completion, it is possible that he could properly authenticate this document even though he admitted during his deposition that he had not personally prepared the document and did not personally review the documents related project RRP 4139. With the exception of the Agreement, and the possible exception of the Certificate of Completion, none of the affiants personally attested to the genuineness and veracity of the BNSF bill, and the other documents upon which they relied, based on their personal knowledge, nor did they affirmatively lay a foundation therefore under an exception to the hearsay rule. *See* ¶ 39.

¶45 While BNSF claims it could establish a foundation for these documents under the public and business records exception to the hearsay rule, M. R. Evid. 803, the fact is it did not do so, either in its briefs, affidavits, or in oral argument before the District Court. On the other hand, Smith did not allege that the exhibits themselves were fraudulent or inauthentic, nor did Smith move to strike any of the exhibits under the Montana Rules of Evidence. Instead, Smith lodged a generalized objection to the affidavits and their supporting exhibits, based on the lack of the affiants' personal knowledge.

¶46 Moreover, while Smith argues the affiants lack the personal knowledge to give testimony under Rule 56(e), she does not allege that these records upon which they based

23

their testimony would necessarily be inadmissible under the Montana Rules of Evidence. As a result, we are confronted with this question: When the non-moving party argues an affiant lacks the personal knowledge to establish the exhibits themselves are admissible, must the party moving for summary judgment lay a foundation for each exhibit it asks the court to rely upon in support of its motion?

¶47 Although we have not yet addressed this precise issue, the rule governing these situations has been stated by the Ninth Circuit as follows:

> It is well established that unauthenticated documents cannot be considered on a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). To be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.*; *see also* 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2722 at 58-60 (2d ed. 1983). A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment. *Canada*, 831 F.2d at 925; *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976); *United States v. Dibble*, 429 F.2d 598, 601-602 (9th Cir. 1970).

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1990).

¶48 It appears this rule is followed by many other courts. *E.g.*, *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993); *Guidry v. Aventis Pharmaceuticals, Inc.*, 418 F. Supp. 2d 835, 839 (M.D. La. 2006); *In re Northgate Computer Systems, Inc.*, 240 B.R. 328, 338 (Bankr. D. Minn. 1999); *see also* Wright, Miller and Kane, *Federal Practice & Procedure* vol. 10A, § 2722 n. 40, 382-84

(3d ed. West 1998) (collecting numerous other authorities in support of this proposition). We determine it appropriate to adopt this rule.

¶49 There are two exceptions to this general rule which are arguably applicable to the instant case. The first is an exception for self-authenticating documents. "Each document submitted in support of summary judgment must be either properly authenticated, or must be self-authenticating under the Federal Rules [of Evidence]." *Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16 (D. Mass 2006). In Montana, M. R. Evid. 902, the counterpart to the federal rule discussed in *Goguen*, governs self-authenticating documents. M. R. Evid. 902 provides ten categories of documents for which "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required . . . ." These include: (1) Domestic public documents under seal; (2) Domestic public documents not under seal; (3) Foreign public documents; (4) Certified copies of public records; (5) Official publications; (6) Newspaper and periodicals; (7) Trade inscriptions and the like; (8) Acknowledged documents; (9) Commercial paper and related documents; and (10) Presumptions created by law. M. R. Evid. 902(1) through (10).

¶50 In this case, Althof has properly authenticated the Agreement. The question remains, therefore, whether the other documents relating to project RRP 4139 supplied by BNSF—including the Certificate of Completion and the bill from BNSF—were properly considered. The BNSF bill does not fall into any of categories described in M. R. Evid. 902, and instead is more akin to a business record which may be admitted under M. R. Evid. 803(6). Neither does the Certificate of Completion fall into any of these categories. Although the Certificate was presumptively created and maintained by the

State, it was not certified as required in subsection (4), nor does it meet the requirements in subsection (2), because there has been no certification from a "public officer having a seal and having official duties in the district or political subdivision of the officer or employee . . . under seal that the signer has the official capacity and that the signature is genuine." M. R. Evid. 902(2).

¶51 A second exception applies in situations where the moving party fails to lay a proper foundation for an exhibit, but the court's consideration of that document amounts to harmless error under the circumstances of the case. In *Hal Roach Studios*, for instance, the Ninth Circuit found that a moving party failed to lay a proper foundation for a particular exhibit, an S-1 Registration Statement filed with the Securities and Exchange Commission, as required under Fed. R. Evid. 901(b) in support of a summary judgment motion. *Hal Roach Studios*, 896 F.2d at 1550-51. Nonetheless, the Ninth Circuit concluded this failure was harmless error because: (1) the moving party had submitted a declaration of a corporate officer who could have authenticated the document by virtue of his official position under Fed. R. Evid. 901(b)(1) and his personal knowledge regarding the contents of the document; and (2) both parties had submitted copies of the Registration Statement to the district court. *Hal Roach Studios*, 896 F.2d at 1551; *accord Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007).

¶52 Because, as established above, these documents are not self-authenticating, the only other possible basis for accepting them is that their consideration amounts to "harmless error," meaning that "a competent witness with personal knowledge *could* have authenticated the document." *Burch v. Regents of the U. of Cal.*, 433 F. Supp. 2d

26

1110, 1120 (E.D. Ca. 2006) (citing *Hal Roach Studios*, 896 F.2d at 1552). Here, none of the affiants could have testified to the genuineness and authenticity of the BNSF bill because none of the affiants had seen the BNSF bill prior to its production by BNSF. The Certificate of Completion presents a slightly different situation because Tholt had actually signed this document in his official state capacity. Thus, Tholt could have authenticated this document under M. R. Evid. 902(2), and so its consideration amounts to harmless error in this case.

¶53 However, the BNSF bill, and the other documents upon which the affiants relied, are not covered by the harmless error exception to the requirement that documents in support of a summary judgment motion must be properly authenticated by the moving party. Thus, the BNSF bill should not have been considered by the District Court in granting summary judgment to BNSF. Similarly, the affiants and Tholt should not have been permitted to rely on the BNSF bill, and any other unauthenticated and unspecified documents, in support of BNSF's motion under the requirements of M. R. Civ. P. 56(e). Thus, we cannot affirm the District Court's grant of summary judgment in this case. "If there is any doubt as to the propriety of a motion for summary judgment, it should be denied." *Jarvenpaa v. Glacier Elec. Cooperative, Inc.*, 271 Mont. 477, 480, 898 P.2d 690, 692 (1995) (citing *Rogers v. Swingley*, 206 Mont. 306, 312, 670 P.2d 1386, 1389 (1983); *Cheyenne Western Bank v. Young*, 179 Mont. 492, 496, 587 P.2d 401, 404 (1978)).

¶54 While BNSF has cited to a number of cases which support its position that the quantum of proof it has offered here was sufficient, none of these cases are particularly

helpful because they present situations where the underlying admissibility of the affidavits and documents was either assumed or unchallenged. In *O'Bannon* and *McDaniel*, for instance, there was no mention of a challenge to the admissibility of the evidence or affidavits under the Federal Rules of Civil Procedure. *O'Bannon*, 169 F.3d at 1089-91; *McDaniel*, 932 F. Supp. at 167-68. Similarly, in *Hargrove*, a Louisiana appeals court found that a witness without personal knowledge of the expenditure of federal funds at a railroad crossing gave credible testimony in support of the Missouri Pacific Railway Company's argument that federal funds had been expended in upgrading that crossing, but there is no indication in that case that the witness lacked personal knowledge of the documents upon which he relied in giving his testimony. *Hargrove*, 925 So.2d at 30-31; *see also Richardson v. Norfolk Southern Ry. Co.*, 923 So.2d 1002, 1009 (Miss. 2006); *Security First Bank*, 213 F. Supp. 2d at 1090 (no discussion of whether documents attached to an affidavit must be admissible under hearsay exception); *Lee*, 245 F.3d at 1106 (same); *Wagoner*, 246 F. Supp. 2d at 1005-07 (no discussion of admissibility of exhibits attached to affidavit, and further, a declaration was presented by an affiant with personal knowledge that federal funds used at a crossing).

¶55 In sum, the cases cited by BNSF do not displace the clear evidentiary requirements for summary judgment motions contained in M. R. Civ. P. 56 and the governing case law. While this is arguably a close case, and BNSF may well be correct that it can supply the proof necessary to ultimately prevail, the record establishes it has not yet done so for purposes of summary judgment.

## CONCLUSION

28

¶56 We hold that the District Court erred in concluding that BNSF was entitled to summary judgment, because BNSF failed to comply with the evidentiary requirements of M. R. Civ. P. 56(e). We decline to strike the federal preemption defense, as requested by Smith. Accordingly, we reverse the grant of summary judgment and remand for further proceedings consistent with this Opinion.

_____
                                       Justice

We concur:

_____
                      Chief Justice

_____

_____
                    Justices

Justice John Warner concurs.

¶57 I concur in the Court's opinion. The Court correctly reverses the District Court's grant of summary judgment because the requirements of M. R. Civ. P. 56 were not met, for the reasons stated. However, so as to not be misleading I am constrained to state my opinion that Smith's success on appeal may yet prove to be a hollow victory.

¶58 The Court's holding is contrary to Smith's position that most of her state law claims are not preempted by federal law, even if BNSF can prove that double reflectorized crossbucks were installed at the Hesper crossing using federal funds. As a fall-back position, Smith goes on to argue that in order to establish its preemption defense BNSF must conclusively prove that double reflectorized crossbucks were installed using federal funds. Such is not the case.

¶59 There is no rule of evidence or law in Montana that would require that BNSF prove conclusively that double reflectorized crossbucks were installed using federal funds, notwithstanding Smith's citation to *Mo. Pacific v. Limmer*, 180 S.W.3d. 803 (Tex. App. 2005), which case is inapposite.[1] Section 26-1-102(2)(b), MCA. The standard of proof is by a preponderance of the evidence, §§ 26-1-402, 26-1-403(1), MCA, and circumstantial evidence can be sufficient for proof of any fact. *Dalbey v. Equitable Life Assur. Socy. of U.S.*, 105 Mont. 587, 599, 74 P.2d 432, 435 (1937); *In re Bragg's Est.*, 106 Mont. 132, 139, 76 P.2d 57, 60-61 (1938); *Jacques v. Mont. Natl. Guard*, 199 Mont. 493, 496-97, 649 P.2d 1319, 1321 (1982).

---

[1] In Appellant's brief, *Mo. Pacific v. Limmer* is mis-cited as *Union Pacific v. Limmer*.

¶60 As Smith has presented nothing sufficient to raise a material issue of fact concerning the matter, should BNSF satisfy evidentiary and foundational requirements noted by the Court, after further proceedings on remand it might be entitled to summary judgment or a directed verdict on the issue of preemption.

John Warner
Justice